CHARLES E. ADAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88274.   Promulgated February 9, 1939.

*Raymond N. Beebe, Esq., Raymond C. Cushwa, Esq.,* and *Donald R. Richberg, Esq.,* for the petitioner.

*Conway Kitchen, Esq.,* and *E. O. Hanson, Esq.,* for the respondent.

392

OPINION.

DISNEY: The question for determination here is whether benefits flowing to the petitioner under the option agreement were by way of compensation to him, or whether the transaction was a mere purchase and sale of stock, the gain or loss thereon to be determined at the time of resale of the stock. He did not resell any of the stock in the taxable year.

We have very recently determined this question in *Delbert B. Geeseman*, 38 B. T. A. 258, and in *Gordon M. Evans*, 38 B. T. A. 1406. On facts in both proceedings very similar to those herein, we held that the acquisition of stock by the petitioner did not constitute the receipt of compensation.

Respondent suggests that *Delbert B. Geeseman*, *supra*, is distinguishable in the same manner as *Rossheim* v. *Commissioner*, 92 Fed. (2d) 247, and that the latter is distinguishable because in the instant proceeding the petitioner could not exercise the option prior to December 26, 1933, though the option was granted and accepted on April 18, 1933. We think there is no such distinction between the present proceeding and *Delbert B. Geeseman*, *supra*, and *Rossheim* v. *Commissioner*, *supra*, for examination of the former discloses that, as in the instant proceeding, the option was not exercisable at the

date given. It was offered on March 11, 1931, but the optionee could not purchase before September 1, 1931. Likewise in *Rossheim* v. *Commissioner*, *supra*, the optionee could purchase only when the stock, which was at the time of option selling from $30.50 to $45 per share, should sell on the market at $55 per share in lots of 1,000 shares. We find, therefore, in this respect no reason to deviate from our conclusions in *Delbert B. Geeseman*, *supra*. In *Gordon M. Evans*, *supra*, the option was offered on September 13, 1929, but provided for delivery of stock not earlier than December 1, 1929, and it is apparent that the situation is not essentially different from that in the instant proceeding.

Respondent suggests as further distinction that the option herein could be canceled at any time by the trustees. This fact does not appear in *Delbert B. Geeseman*, *supra*, or in *Gordon M. Evans*, *supra;* but in our opinion, the contention is too broad. There was not an absolute right to cancel the option. It could be canceled, so far as not already exercised, only for good cause (which specifically should not include increase in market value of the stock), if the board of directors of the corporation deemed such action for the best interests of the stockholders of the company. We can not think that such a qualified power to cancel the option would cause each sale of stock to constitute a new transaction, or sever the connection with the original agreement of option. Moreover, the evidence showed that the object of this provision, as understood by both parties to the agreement at the time, was to safeguard against possible legislation which might have the effect of making consummation of the agreement illegal. Respondent vigorously excepted to such evidence on the theory that it tended to modify or contradict the written option, but such rule governs only as between the parties to an agreement, and not to this proceeding. *James D. Boone*, 27 B. T. A. 1064. As we construe the provision for cancellation, the corporation could have canceled the option only upon a showing of good cause. We think the record herein fairly negatives such good cause. The option was not canceled, and the optionee satisfied the corporation that he was fully able financially to make payment. We are therefore unable to find in the cancellation provision any distinction between this proceeding and *Delbert B. Geeseman*, *supra*, and *Gordon M. Evans*, *supra*. The principles there enunciated control here. The option price was not substantially different from the fair market price at the date of the option. Indeed, the option was at a price slightly higher than the market price at the time. There was undoubtedly connection between petitioner's position as an employee and the granting of the option to him, but it did not amount, by any means, to the option being granted as

compensation for services rendered. In *Omaha National Bank* v. *Commissioner*, 75 Fed. (2d) 434, referring to the optionee, it was stated:

\* \* \* Undoubtedly he had been accorded this right of purchase because he was a valued employee of the company and it wished to retain his services. \* \* \*

Yet it was held that the option was not compensation for services rendered. The distinction between compensation for services and the granting of an option to employees in order to benefit the company by making the employees more interested in the welfare of the company has, in that case, and in *Delbert B. Geeseman, Gordon M. Evans*, and *Rossheim* v. *Commissioner*, all cited above, been fully, and we think soundly, set forth, so that further extended discussion is not here necessary. The situation in the present proceeding offers no difference in principle and no facts to indicate payment of compensation for services rendered, more than in the cases above noted. Indeed, in *Gordon M. Evans, supra,* there was some language indicating that the agreement was "designed to compensate those who continue to give to the company their best efforts", etc., though it was contradicted by other provisions of the agreement; whereas the evidence herein tends throughout, we think, to negative any agreement to compensate for services. Compensation for services was handled on a different basis, dependent upon the earnings of the corporation; the granting of the options to purchase stock had no such limitation. We think the situation amounted to nothing more than an incentive to loyal support of the organization much in the same manner as approved in the cases above cited.

Respondent's reference to article 22 (a) (1) of Regulations 84 and to similar provisions in prior regulations does not, in our opinion, offer reason for deviating from the opinion already expressed above and in previous cases, for the various cases upon this subject have not permitted, and obviously should not permit, the regulations to add anything to the statute.

We therefore hold that the petitioner did not have income in the taxable year represented by the difference between the option price and the fair market value of the stock in the corporation.

*Decision will be entered for the petitioner.*